## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GUY E. FRANKLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:23-cv-00040-KD-C** |
| | ) | |
| **AUSTAL USA, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on Defendant Austal USA LLC's partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 27). For the reasons stated on the record during the January 3, 2024 hearing (Doc. 47), and as further discussed in this report and recommendation, the undersigned **RECOMMENDS** the motion be **GRANTED**.

### I.  *Background*

#### A.  **Procedural History**

Plaintiff Guy Franklin ("Franklin") initiated this action by filing a complaint in this Court against his former employer, Defendant Austal USA LLC ("Austal"), on January 31, 2023. (Doc. 1).  The initial complaint was dismissed by order dated June 21, 2023, with leave to amend. (Doc. 20). The operative amended complaint was filed July 10, 2023. (Doc. 24). In short, the amended complaint challenges Austal's implementation of a COVID-19 vaccine mandate in 2021 and its alleged failure to provide a religious exemption or reasonable accommodation for Plaintiff as it pertained to that vaccine mandate, as well as the subsequent termination of his employment with Austal. (*Id*.). It brings six counts: Count I (Violation of First Amendment of U.S. Constitution, Free Exercise of Religion Clause); Count

II (Violation of Religious Freedom Restoration Act of 1993); Count III (Deprivation of Civil Rights and Liberties Under 42 U.S.C. § 1983, Fourteenth Amendment Substantive Due Process – Fundamental Right to Privacy: Refusal of Medical Procedures); Count IV (Deprivation Civil Rights and Liberties Under 42 U.S.C. § 1983, Fourteenth Amendment Substantive Due Process – Fundamental Right to Privacy: Avoid Disclosure of Personal Medical Information); Count IV[1] (Deprivation of Civil Rights and Liberties Under 42 U.S.C. § 1983, Fourteenth Amendment Due Process Clause – Freedom of Religion); Count V (Negligence and/or Gross Negligence); and Count VI (Invasion of Privacy).

Shortly after the amended complaint was filed, Austal moved for partial dismissal of Counts I, II, III, IV-Privacy and IV-Religious Freedom under Fed. R. Civ. P. 12(b)(6). (Doc. 27). Austal is not presently seeking dismissal of the state law claims in Counts V and VI. (*Id*.). This motion was fully briefed (Docs. 35, 37), a hearing on the motion was held before the undersigned on November 9, 2023 (Doc. 47), and it is now ripe for disposition.

     **B. Factual Allegations**[2]

Austal is, and was at all times relevant to this action, a federal contractor "that has contracts or contract-like instruments with the U.S. and state governments." (Doc. 24, PageID.162). Austal builds, among other things, ships for the United States Navy. (Doc. 24,

---

[1] Plaintiff's amended complaint includes two counts labeled "Count IV." (Doc. 24, PageID.195-201). He clarifies in his opposition response that this was a mere clerical oversight. (Doc. 35). For purposes of this report and recommendation, the undersigned refers to the first "Count IV" as "Count IV-Privacy," and the second "Count IV" as "Count IV-Religious Freedom." (*See* Doc. 24).

[2] At this stage, well-pleaded facts are accepted as true construed in the light most favorable to the non-movant. *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371,1379 (11th Cir. 2010) (citation omitted).

PageID.162). Franklin worked at Austal from 2014 until his termination on October 28, 2021. (Doc. 24, PageID.160).

During the early stages of the COVID-19 pandemic, Austal was classified as an "essential business." (Doc. 24, PageID.174-76). Safety precautions implemented by the company included guidance such as hand washing, staying home if sick, social distancing, hand sanitizing and use of facial protection. (*Id*.). Specific guidance from Austal throughout the pandemic was infrequent, inconsistent, and according to Plaintiff, arbitrary. (*Id*.). During 2020 and into 2021, day-to-day operations at Austal were "seemingly normal;" Franklin worked his job as he usually did, just as he had for the preceding seven-plus years. (*Id*.). By October 2021, however, the mood at Austal and among many of its employees had shifted. (Doc. 24, PageID.179-84). In particular, the environment became seemingly hostile toward unvaccinated employees like Franklin, who felt they were being treated differently due to their unvaccinated status. (*Id*.). This occurred not only among co-workers but between the company and its unvaccinated employees. (*Id*.). For example, Austal went so far as to require vaccinated employees to wear a special sticker signifying their vaccinated status, which ostracized those without it. (*Id*.). The company encouraged vaccinations but did not require them – at least for a while. (*Id*.).

To fight the pandemic, President Biden sought to implement a series of executive orders aimed at limiting the spread and/or effects of the disease – among them, Executive Order 14042 ("EO 14042"), 86 Fed. Reg. 50, 985-88 (Sept. 9, 2021), which was announced and signed by the President on September 9, 2021. (Doc. 24, PageID.162). In relevant part, EO 14042 – which applied to "covered" federal contractors like Austal – directed the Safer Federal Workforce Task Force to issue guidance with respect to "COVID-19 safeguards" by

September 24, 2021. 86 Fed. Reg. 50 at *985. Federal contractor adherence to those guidelines was mandatory under EO 14042. *Id*. Relevant here, the guidelines stated: "Covered contractors must ensure that all covered contractor employees are fully vaccinated for COVID-19, unless the employee is legally entitled to an accommodation… [by] no later than January 18, 2022."[3] This "vaccine mandate" as it has become colloquially known, never took effect; instead, it was enjoined nationwide, found to be unconstitutional and subsequently withdrawn by the President in 2023. 88 Fed. Reg. 30, 891-92 (May 23, 2023). (Doc. 24, PageID.162).

Before President Biden's announcement of EO 14042 in September 2021, Austal announced and implemented two mandatory vaccination policies. (Doc. 24, PageID.163). First, on August 13, 2021, Austal announced its "Sea Trial Vaccination Requirement," applicable to "all personnel participating in sea trial, inclusive of dockside trials… to support vendors and Navy personnel supporting units," and set a deadline of September 30, 2021 for these persons to get vaccinated. (Doc. 24, PageID.163-64; Doc. 24-4). This policy made no mention of exemptions or of consequences for non-compliance. (Doc. 24-4).

The second policy was announced September 3, 2021 to an unidentified group of "Austal USA Leaders." (Doc. 24, PageID.164; Doc. 24-5). This second policy – referred to here as the "Austal Leadership Vaccination Policy" – applied "to all executives, directors, managers, supervisors, foreman, vessel captains, and other key company personnel members as designated by their respective Department management," and set a deadline of October 8, 2021 for these persons to get vaccinated. (Doc. 24, PageID.164; Doc. 24-6). This

---

[3] https://www.saferfederalworkforce.gov/downloads/Guidance%20for%20Federal%20Contractors_Safer%20Federal%20Workforce%20Task%20Force_20211110.pdf (last visited, Feb. 8, 2024).

second policy, both in its letter announcement and formal policy form, notes the availability of requests for exemptions and accommodations and alludes to employment consequences in some circumstances. (Docs. 24-5, 24-6).

A third policy, the "General Employee Vaccination Policy," was announced company-wide on October 1, 2021, after EO 14042's reveal. (Doc. 24, PageID.164; Doc. 24-6). This policy expressly applied company-wide and stated that "[c]ompliance with the federal vaccination mandate, excluding approved exemptions or accommodations, is a condition of continued employment with Austal USA." (Doc. 24-6). This policy set a vaccination deadline of October 27, 2021 (for the Johnson & Johnson single dose vaccine, or a first dose of the Pfizer or Moderna vaccines) and November 24, 2021 for second dose vaccinations of Pfizer and Moderna. (*Id*.). Employees were required to submit verification of the same. (*Id*.). In closing, the announcement notes that requests for exemptions and accommodations could be submitted, but that "[a]pproval of exemptions/accommodations will be subject to specific legal requirements… notification will be given to the employees if the requirements are not met or cannot be accommodated." (*Id*.). Four days later, Austal distributed a communication detailing the exemption and accommodations request process. (Doc. 24, PageID.165). Plaintiff asserts Austal used employee medical information, without employee knowledge or consent, in determining whether the implementation of alternative measures (e.g., bi-weekly testing, masking and social distancing) was feasible as part of the process for evaluating exemption and accommodation requests. (Doc. 24, PageID.168-70).

Franklin timely submitted his religious exemption request on October 6, 2021 based upon his sincerely-held Christian beliefs. (Doc. 24, PageID.165-67). His request was denied October 20, 2021 on a basis that it would constitute an "undue hardship on the business."

(Doc. 24, PageID.169).[4] The following day, Franklin was approved for partial receipt of funding under the Family Medical Leave Act. (Doc. 24, PageID.168). The day after that, Austal President Rusty Murdaugh gathered more than 200 unvaccinated employees, including Franklin, to inform them that their exemption requests had been denied and that failure to receive a vaccination by October 27, 2021 would result in termination. (*Id.*). On October 26, 2021, Franklin individually received correspondence again stating he would be terminated if he did not timely receive a vaccination. (Doc. 24, PageID.171). This same day, all unvaccinated employees received a notice detailing employee options in the face of this decision, explaining termination procedures, and noting the possibility of rehiring and preservation of anticipated bonuses. (Doc. 24, PageID.171; Doc. 24-9).

On October 28, 2021, Franklin was terminated by Austal after his religious exemption was denied. (Doc. 24, PageID.172). This was 83 days prior to EO 14042's effective date. (Doc. 24, PageID.172). Austal ultimately denied 152 of 152 religious exemption requests and granted 38 medical exemption requests. (Doc. 24, PageID.169-70). Hundreds of other employees resigned between announcement of the vaccination policies and the October 27, 2021, company-wide termination date. (Doc. 24, PageID.172). On March 31, 2022, Austal abandoned its vaccination policies. (*Id.*). This action followed.

---

[4] Plaintiff calls foul on Austal's "hardship" contention, asserting the company "continuously reported throughout the pandemic that its financial health has never been better." (Doc. 24, PageID.171). In drawing this contrast, he points to $61 million in COVID-19 relief funds that were purportedly "predicated on" ensuring the protection of jobs, bolstering local economies and ensuring critical capacities relevant to military readiness, a $3.3 billion federal government contract from June 2022, $600 million in congressional appropriations, "$1 billion in investments to the Mobile, Alabama region with several millions of indirect benefits," and an October 25, 2021 a joint allocation of $3 million between the City of Mobile and Mobile County.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged ... [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "plain statement possessing] enough heft to sho[w] that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III.     Analysis of Claims

It is this Court's view that the federal law claims in Plaintiff's First Amended Complaint are due to be dismissed. Based upon the facts as alleged, and viewed in the light most favorable to Plaintiff, as well as the case law set forth below, it is decided that Plaintiff has not sufficiently stated a federal law claim upon which relief may be granted. The First Amended Complaint (Doc. 24) fails to demonstrate that Austal's contested actions in this litigation – namely, a private employer subjecting its employees to a COVID-19 vaccine

mandate – rise to the level of a state or federal actor status for purposes of maintaining such federal law claims.

"As a matter of substantive constitutional law, the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments....' " *Lugar v. Edmondson Oil Co.*, 102 S. Ct. 2744, 2753, (1982) (citing *Flagg Bros. v. Brooks*, 98 S. Ct. 1729, 1733 (1978)); *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 280 (6th Cir. 2023) ("The first eight provisions of the Bill of Rights offer the most prominent example of constraints on government... these constraints typically protect citizens from the government, not from each other") (citing *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019))).

The Supreme Court has recognized "private entit[ies] can qualify as a state actor in a few limited circumstances," and has developed three tests to guide courts in this inquiry: (1) the public function test, (2) the state compulsion test and (3) the nexus/joint action test. *Halleck*, 139 S.Ct. 1921, 1928, 204 L.Ed 2d 405 (2019). The Eleventh Circuit applies these same three tests for establishing state action by what is otherwise a private entity. See *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citing *NBC, Inc. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026–27 (11th Cir. 1988)). "The very existence of the three tests to determine whether a private party's actions can be fairly attributed to the state indicates a presumption — a reasonable and correct one — that a private party has not acted under color of state law." See *Hines v. Chandra*, 2007 WL 9658631, at *3 n.4 (N.D. Ohio May 17, 2007).

Plaintiff asserts that Austal is a state actor under all three tests. See Plaintiff's Response, Doc. 35, PageID.367-382. Because Plaintiff agrees that all his federal claims

require a showing of state or governmental action, he must first establish that Austal-an otherwise private entity-is a state actor for his causes of action to be potentially viable. The Court, however, finds that the Amended Complaint fails to support Plaintiff's position that the actions supporting his claims were state or governmental actions. A further explanation of the Court's reasoning is set out below.

### A. Count I

Count I of Plaintiff's First Amended Complaint alleges that Austal's actions violate the First Amendment of the U.S. Constitution, namely the Free Exercise of Religion Clause. (Doc. 24). More specifically, Plaintiff pleads the following:

> 108. The First Amendment's Free Exercise Clause prohibits the government or a private actor operating under the color of law from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

> 110. As shown herein, Defendant's conduct qualifies as state action. Defendant's actions were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of federal law. Alternatively, Defendant's actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of state law.

*See id.*

This Court agrees with Plaintiff that state or federal actor status is required to proceed with the claim set out in Count I. Indeed, the First Amendment only restricts *state* action. *See, e.g., Leitgeb v. Sark Wire Corp.,* 2022 WL 18777380 at *7 (*citing Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1930, 204 L.Ed 2d 405 (2019)), affi'd *Leitgeb v. Sark Wire Corp.,* 2023 WL 5607882 (11th Cir. Aug. 30, 2023). The "under color of law" element cannot be satisfied by "merely private conduct no matter how discriminatory or wrongful." *American Manuf. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

### 1. Public Function Test

To establish that Austal's action were taken under color of law, the first argument presented by Plaintiff is that Austal was performing a public function that has been exclusively reserved by the government. (See Doc. 24 at ¶ 22).  It is alleged that Austal "provides the important, essential, and traditionally exclusive public function of providing for the common defense, national security, protection, and freedom of over 340 million American citizens." (Doc. 35 at PageID.367).  "Additionally, Plaintiff argues that 'Defendant's purported reason for the creation, implementation, and enforcement of its COVID-19 Vaccination Mandate, COVID-19 Testing Policy, COVID-19 Masking Policy, COVID-19 Social Distancing Policy was because they were following the direction of the Department of Defense ("DOD"), CDC, and the White House.' (Doc. 24, at ¶ 21; *see also* Docs. 24–2, 24–3, 24–5, 24–8, 24–9, 24–12 & 24–13)." Doc. 35, PageID.372.

Under the public function test, "a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.'" *Halleck,* 139 S. Ct. at 1928*.* Historically, private corporations and other entities have performed activities that serve the national interests of the government, as is the case here.  But the fact that a private entity performs a function which serves the public does not transform those acts into governmental action.  The government must have traditionally and exclusively performed the function.  *Id.* at 1929.

In the First Amended Complaint, all that Plaintiff identifies as unconstitutional acts are employment actions by a private corporation that is building ships pursuant to a contract with the United States Navy.  He complains that Austal discriminated against him based on his religious beliefs by the imposition of a COVID-19 vaccination mandate and the refusal to

grant him an exemption from the mandate. Nowhere is it found in his Amended Complaint or his response to the motion to dismiss that the building of naval vessels at the request of the government or the employment actions complained of have ever been exclusively performed by the government. In fact, the history of naval operations in the United States that he has referenced would appear to show the exact opposite.

There are insufficient facts pled demonstrating that Austal is or was a state actor under the public function test, thereby allowing Plaintiff to state a claim upon which relief may be granted. *See Willis v. Univ. Health Svcs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993). Indeed, Plaintiff's First Amended Complaint concedes that Austal acted "prematurely" in carrying out Executive Order 14042, rather than in some governmental capacity. (Doc. 24, ¶54, PageID.172). And, at the hearing on November 9, 2023, counsel for Plaintiff conceded that the only federal law at issue was, in fact, Executive Order 14042.[5] What Plaintiff ultimately challenges in Count I is Austal's issuance of a vaccine mandate and denial of his request for religious exemption. The law is clear that an employee vaccination mandate is not a public function because it is not a traditional function within the exclusive prerogative of the government. *See Johnson v. Tyson Foods, Inc.*, 607 F.Supp. 3rd 790, 800-801 (W.D. Tenn. June 15, 2022). Under the facts pled, state actor status cannot be conferred upon Austal simply because it is a government contractor (as alleged in the First Amended Complaint), *see Manhattan Cmty. Access Corp. v. Halleck*, 139 U.S. S.Ct. at 1932 ("Numerous private entities in America obtain…government contracts…If those facts sufficed to transform a

---

[5] Likewise, Plaintiff has identified no applicable Alabama state law under which Austal was allegedly acting. During the November 9, 2023 hearing, it became clear that, on the face of the First Amended Complaint, there was no alleged constitutional violation by state officials of which Austal was a part or was otherwise involved.

private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints on their activities. As this Court's many state-action cases amply demonstrate, this is not the law…"). The same would hold true if Plaintiff had offered or alleged (which he did not) that Austal issued the mandate acting as a government-related business. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357-358 (1974).

## 2. State Compulsion Test

Plaintiff has not sufficiently plead that Austal acted as a state actor regarding his First Amendment rights under the state compulsion test. *See Willis, supra*. Plaintiff's First Amended Complaint is clear that Austal was acting as a private employer when it imposed the vaccine mandate and denied Plaintiff's request for religious exemption. (Doc. 24, ¶¶28-30, PageID.165). A private entity like Austal does not become a state actor by complying – or, in this case, rather attempting to comply with[6] – an executive order. *See Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 283 (6th Cir. 2023).[7] But that is exactly the conduct that Plaintiff challenges here. Plaintiff's contention that, by allegedly accepting COVID-19 relief funding,

---

[6] Plaintiff's First Amended Complaint confirms that Austal imposed the vaccine mandate *before* the date Executive Order 14042 was to go into effect and acknowledges that the Executive Order never did, in fact, become effective. *See* Doc. 24 at ¶54, PageID.172 ("Defendant's universal termination was eighty-three (83) days before EO 14042 was to become effective and only affected those who made exemption requests and was undertaken due to the government's commandment and encouragement to follow EO 14042").

[7] Plaintiff has also alleged that "there is no other maritime shipbuilder in the shipbuilding industry, nor any entity in the defense federal contracting industry, which engaged in similar conduct within such a condensed timeframe among employees to satisfy the requirements of EO 14042. (Doc. 24, at ¶ 57)." Doc. 35, PageID.376.  This allegation cuts against the argument that Austal was compelled by the Navy or any other arm of the federal or state governments to impose a vaccine mandate on the schedule alleged by Plaintiff.

Austal was transformed into a state actor also fails. *See Lane v. Piedmont Healthcare, Inc.*, 2021 WL 5074494 at *2-4 (N.D. Ga. Oct. 13, 2021).

### 3.   Nexus/Joint Action Test

The third test is the nexus/joint action test. To charge a private party like Austal with state action, the government and private party must be intertwined in a "symbiotic relationship." *See Nat'l Broadcasting Co. v. Commun. Workers of Am. AFL-CIO*, 860 F.2d 1022, 1027 (11th Cir. 1988). General allegations of collusion are insufficient to satisfy this standard. *See Platta v. Gray Media Group, Inc.*, 2023 U.S. Dist. LEXIS 83740 at *14-15 (N.D. Ga. May 12, 2023), report and recommendation adopted by *Platta v. Gray Media Group, Inc.*, Civil Action No. 1:23-cv-00236-VMC-JKL (N.D. Ga. November 17, 2023).

In the instant case, Plaintiff appears to argue that Austal and the United States government had a symbiotic relationship by virtue of the fact that Austal is a federal contractor. What Plaintiff has failed to do is point to any action of the U.S. government that *required* Austal to implement its vaccine requirement in the fall of 2021, as alleged in the First Amended Complaint. Rather, the language of the First Amended Complaint states otherwise, making clear that Plaintiff's refusal to obtain the COVID-19 vaccine occurred some eighty-three (83) days *before* EO 14042 was to go into effect. (Doc. 24, ¶54, PageID.172). Additionally, the amended complaint does not plausibly allege that the state partnered with Austal to violate Plaintiff's constitutional rights. *Lane*, 2021 WL 5074494, at *3 (holding that a hospital was not state actor under the nexus/joint action test even though it changed its visitation policies "in response to state guidance and restrictions" because the state did not require the policies and the plaintiffs did not allege government involvement in creating the policies).

**B. Count II**

Count II of the First Amended Complaint contends that, by implementing the vaccine mandate and denying his request for religious exemption, Plaintiff's rights under the Religious Freedom Restoration Act ("RFRA") were violated. Even viewing the facts plead in the light most favorable to the Plaintiff, the First Amended Complaint fails to state a claim upon which relief can be granted under RFRA. Plaintiff's First Amended Complaint concedes that RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." (Doc. 24 at ¶136, PageID.189). The First Amended Complaint also contends that, "Defendant's COVID-19 Vaccination Mandate substantially burdens Plaintiff's sincerely held religious beliefs by requiring him to take an action (taking an injection of the mRNA COVID-19 vaccine medical procedure), which would violate those religious beliefs or suffer adverse employment action and financial harm." *Id.* at ¶145, PageID.145. Other than generally contending that Austal was acting under color of state law, *see id.* at ¶140, PageID.145, which this Court has already determined not to be the case,[8] Count II contains *no* allegations about governmental action and instead focuses upon what Austal did and did not do vis a vis the vaccine mandate in its role as a private employer, including the denial of Plaintiff's request for a religious exemption. *See* Doc. 24.

In addition, there is a split in the Circuits as to the appropriate parties in a RFRA action. After a review of the applicable cases, the undersigned is convinced that the majority opinion within the Circuits addressing this issue requires that for a RFRA action to proceed

---

[8] *See* Section III.A., *supra.*

a governmental body must be named as a party.  The Plaintiff employees do not have the

option of prosecuting a RFRA action against a private party like Austal. *See Ratliff v. Wycliff*

*Assoc.*, 2023 WL 3688082 (M.D. Fla. May 23, 2023):

> The Court acknowledges that a circuit split exists regarding RFRA's application to lawsuits involving only private parties. *Compare Listecki v. Off. Comm. Of Unsecured Creditors*, 780 F.3d 731, 736–37 [7th Cir. ]2015) (does not apply), *and Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 ([7th Cir.] 2006) (does not apply) [abrogated on other grounds by *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012)], *and Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402 ([6th Cir.] 2010) (does not apply), *with Hankins v. Lyght*, 441 F.3d 96, 114–15 (2d Cir. 2006) (applies). Notably, however, one of "the only circuit[s] to analyze the issue and hold [that RFRA applies to private lawsuits] did so in the limited situation [in which] the government could have been a party, over a strong dissent, and has [since] retreated from its holding." *Listecki*, 780 F.3d at 737; *see Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (2d Cir. 2008) (expressing "doubts" about the court's prior holding in *Hankins* because of RFRA's plain language and related policy reasons but declining to revisit the "waived" issue). Nevertheless, the Eleventh Circuit has not squarely addressed the issue. Thus, the Court weighs the reasoning of other circuits to reach its conclusion.
>
> Based on the plain text of RFRA, its legislative history, and the persuasive reasons offered by sister courts, the Court finds RFRA does not apply to lawsuits in which the government is not a party. *See Listecki*, 780 F.3d at 736–37 ("The plain language is clear that RFRA only applies when the government is a party."); *Tomic*, 442 F.3d at 1042 (noting that "RFRA is applicable only to suits to which the government is a party" and that to decide otherwise would be "unsound"); *Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, Civ. No. 21-CV-3161, 2023 WL 2355891, at *5 (Mar. 3, 2023) (slip copy) ("[T]he weight of authorities holds that [ ] RFRA does not apply in cases where ... the government is not a party.").

*Id*. at *7. And, since Plaintiff has not named the government as a party nor identified any

governmental—as opposed to private—action that has aggrieved him in the First Amended

Complaint, there is no claim upon which relief can be granted pursuant to Fed. R. Civ. P.

12(b)(6). As such, it is recommended that Count II be dismissed.

### C.  Count III

Count III of Plaintiff's First Amended Complaint alleges that Austal deprived him of

his civil liberties pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment. He contends

that:

> 169. Defendant's COVID-19 Vaccine Mandates are not a neutral and generally
> applicable law or policy. Defendant's Vaccine Mandates fail strict scrutiny.
> Defendant does not have a compelling government interest in requiring
> Plaintiff to violate his sincerely held religious beliefs by taking an mRNA
> COVID-19 vaccine.

Claims brought under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of the*

*Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) require a

showing of state and/or federal action. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir.

1995) ("A § 1983 suit challenges the constitutionality of the actions of state officials; a *Bivens*

suit challenges the constitutionality of the actions of federal officials"); *West v. Atkins*, 487

U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law"); *Carlson v. Green*,

446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a

federal agent have a right to recover damages against the official in federal court despite the

absence of any state conferring such a right"); *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th

Cir. 2001) (noting "§ 1983 only provides for claims to redress State action"). *See also*, *Jesner*

*v. Arab Bank, PLC*, 584 U.S. 241, 264 (2018) (citing *Correctional Services Corp. v. Malesko*, 534

U.S. 61, 68 (2001) for the principle that "corporate defendants may not be held liable in

*Bivens* actions"); *Am. Mrfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999) ("Like the state-

action requirement of the Fourteenth Amendment, the under-color-of-state-law element of

§ 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'") (citations omitted)).

Just as is true of First Amendment claims, a Plaintiff "must establish that [he was] deprived of a right secured by the Constitution or the laws of the United States, and that the alleged deprivation was committed under color of state law." *American Manufacturers, supra*, at 50; *see Harvey v. Harvey,* 949 F.2d 1127. 1330 (11th Cir. 1992) ("only in rare circumstances can a private party be viewed 'state actor' for Section 1983 purposes"). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the State*?*" *Rendell-Baker v. Kohn*, 102 S. Ct. 2764, 2770, 457 U.S. 830, 838 (U.S., 1982) (citations and quotation marks omitted).

For the same reasons as articulated in Section III.A., above, when viewed in the light most favorable to Plaintiff, the First Amended Complaint does not state sufficient facts to establish that, by implementing the COVID-19 vaccine mandate, Austal was a state actor that would establish a potential violation of 42 U.S.C. § 1983. Therefore, Plaintiff cannot state a claim upon which relief may be granted and Count III is due to be dismissed.

### D. **Count IV-Privacy**

Count IV-Privacy of Plaintiff's First Amended Complaint (Doc. 24) contends that Austal deprived him of his civil rights and liberties under 42 U.S.C. § 1983 by violating his fundamental right to privacy by alleged disclosure of his personal medical information. (Doc. 24, PageID.195). Plaintiff asserts:

177. As delineated herein, Plaintiff's private medical information was disseminated to a multitude of individual employees at Austal USA who had full access to Plaintiff's confidential medical information, which was obtained without Plaintiff's knowledge or consent.

The First Amended Complaint also alleges that Austal's COVID-19 Vaccine Mandate and COVID-19 Policies are not neutral, fail strict scrutiny, and are not the least restrictive means of accomplishing the government's purported interest. *See id.* at PageID.196, ¶ ¶ 179-180. As noted above, however, even when viewing the pleadings in the light most favorable to Plaintiff, there is no indication that there was any governmental action beyond issuance of EO 14042. *See* Section III.A., *supra*. Moreover, the law is clear that following an executive order, or attempting to do so, as Austal did here, is not enough to transform a private entity like Austal into a state actor. *See Ciraci, supra*. The allegations pled by Plaintiff are insufficient to establish by implementing its COVID-19 mandate and denying Plaintiff's exemption request, Austal was assuming an exclusive governmental function, acting pursuant to compulsion by a federal or state government, or taking the actions it did because of a symbiotic relationship with the U.S. government. *See* Section III.A., *supra*. Consequently, Count IV-Privacy of Plaintiff's First Amended Complaint is due to be dismissed for failure to state a claim upon which relief may be granted.

### E. Count IV-Religious Freedom

Count IV-Religious Freedom of Plaintiff's First Amended Complaint (Doc. 24) alleges that Austal deprived him of his civil rights and liberties under 42 U.S.C. 1983 and his due process rights and freedom of religion under the Fourteenth Amendment. The First Amended Complaint states, in pertinent part:

191. Defendant's actions to require stringent requirements for Plaintiff to receive an exemption and/or accommodation from Defendant's COVID-19 Vaccination Mandate, COVID-19 Testing Policy, COVID-19 Masking Policy, and

18

> COVID-19 Social Distancing Policy substantially burden Plaintiff's reasonable request to remain exempt based upon his sincerely held religious beliefs as opposed the requirements necessitated by Defendant in order to remain exempt from those aforementioned policies based upon a simple showing of a COVID-19 vaccination passport through non-verifiable means demonstrate this significant burden.

*See id.* Plaintiff also alleges that Austal failed to engage in an interactive process (Doc. 24, ¶194, PageID.198) and failed to provide him with his requested religious exemption. *See id.* at ¶ 195. All actions undeniably taken by Austal which allegedly violate the Plaintiff's constitutional rights are determined to be those of a private employer, not a state or federal actor. There is no factual basis pled that would allow Plaintiff to proceed on the theory that Austal was acting as a federal or state authority when it imposed a COVID-19 vaccine mandate, allegedly failed to engage in the interactive process and/or grant his exemption and terminated his employment. *See* Section III.A., *supra.*

Again, Plaintiff's argument presented in his response brief and in his First Amended Complaint is that his "fundamental rights and liberties were violated through Defendant's compulsion of its employees … to receive an mRNA COVID-19 vaccine medical procedure against his will and religious beliefs or face termination." Doc. 35, PageID.387-388; "Plaintiff's fundamental rights and liberty interests concerning protections from religious discrimination were deprived by Austal USA's conduct in Fall 2021. (Doc. 24, ¶¶ 185 & 207). Specifically, Plaintiff's ability to practice and exercise his religious beliefs were consistently abridged and 'substantially burdened' by Austal USA's: COVID-19 Vaccination Mandate; COVID-19 Policies; refusal to engage in the interactive process; denial of religious exemption; admonishment of Plaintiff for requesting exemptions; failure to provide adequate resources and knowledge regarding the virus and vaccine to Plaintiff; and ultimate universal termination of every individual at Austal USA who requested a religious

exemption. (Doc. 24, ¶¶ at 189; *see also* at ¶¶ 1–6, 30, 34–35. 38–45, 101, 103–106, & 183–208)." Doc. 35, PageID.388-389.

The factual allegations relevant to Count IV-Religious Freedom, when viewed in the light most favorable to Plaintiff, do not reveal any sort of state or federal governmental action that was the only motivating force for Austal to make the employment decisions alleged to violate Plaintiff's constitutional rights.  The connections between Austal and the U.S. Government through a commercial contract are insufficient to justify attributing the actions of Austal, namely how it handled the COVID-19 vaccination procedures, the exemption process and the denial of Plaintiff's and other employees' requests for religious exemption, to the government.  Finally, Count IV-Religious Freedom does not contain facts sufficient to show that Austal and the government acted in accordance with some symbiotic relationship by Austal's independently imposing its vaccination requirement at the time it did and in the manner that it did. Without the requisite showing of federal or state actor status, there is no basis upon which relief could be granted as to Count IV-Religious Freedom of Plaintiff's First Amended Complaint.

### IV. *Remaining State Law Claims and Supplemental Jurisdiction of the Court Pursuant to 28 U.S.C. § 1367*

Austal's Partial Motion to Dismiss did not address the state law claims of negligence and invasion of privacy contained in Counts V and VI of the First Amended Complaint. (Doc. 27). Thus, should this recommendation be adopted, the only remaining claims before the Court will be state law, versus federal law, claims.  At that point the Court will need to decide, in its discretion, whether it will exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *See, e.g., Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002). In so doing, the Court must weigh whether the "considerations of judicial economy, convenience,

fairness, and comity" weigh in favor of remand to state court. *See Pickering v. Noonan*, 2022 WL 4286846 at \*2 (S.D. Ala. Sept. 16, 2022), *citing Ameritrox, Ltd. v. Millenium Labs, Inc.*, 803 F.3d 518, 537 (11th Cir. 2015). As set out in greater detail below, the parties have identified several factors that they believe weigh in favor of the Court retaining jurisdiction of the remaining state law claims of negligence and invasion of privacy.

First, judicial economy should be considered. In doing so, the Court may examine prior procedural history and related cases. *See Ameritrox, supra*, at 537. Here, the Plaintiff originally filed a *pro se* Complaint. *See* Doc. 1. Thereafter, counsel for Plaintiff entered an appearance and filed the First Amended Complaint. *See* Doc. 24. Shortly thereafter, this Court consolidated this action with the related actions of *Dennis Abbott, et al. v. Austal USA, LLC*, Case No. 1:22-cv-00267-KD-C, *Richard Allen, et al. v. Austal USA, LLC*, Case No. 1:22-cv-00328-JB-B, and *Paul David Baugh, Jr., et al. v. Austal USA, LLC*, Case No. 1:22-cv-00329-KD-C for purposes of discovery only. *See* Doc. 44. Notably, Counts V and VI of the First Amended Complaint mirror the allegations in the *Abbott*, *Allen*, and *Baugh* actions also currently pending before this Court. Those actions, like Plaintiff's, contain state law allegations of negligence and invasion of privacy as they relate to Austal's COVID-19 vaccine mandate, the requests for religious and/or medical exemptions, and subsequent termination of employment. Given that the cases are already combined for purposes of discovery, and contain similar allegations, it is the view of the parties that judicial economy weighs in favor of this Court exercising its discretion to retain supplemental jurisdiction over Plaintiff's negligence and invasion of privacy claims. It is argued that retention of jurisdiction by this Court will allow the parties to most expeditiously complete discovery as it relates to

Plaintiff's state law claims without the interruption of a re-filing in state court, which would, in turn, necessitate a responsive pleading and would delay the action further.

Fairness, it is argued, also supports the Court's retention of the state law claims via supplemental jurisdiction. As noted above, this action is already combined, for discovery purposes, with similar actions pending in this Court.[9] Principles of fairness will allow the parties to utilize already-completed discovery to move the remaining claims in this action forward. On the contrary, it would arguably defy fairness to require Plaintiff to refile his claim in state court (even assuming that he could) and "start over," *see Wilson v. Stewart,* 2021 WL 4268050 at *3 (S.D. Ala. Sept. 20, 2021), where his state law claims have already been consolidated with other claims that are over one (1) year into the discovery process. The parties agree that it is only fair that Plaintiff be allowed to proceed in his already-pending action and take advantage of other discovery completed that is relevant to his remaining claims.  Likewise, the same holds true for Austal, who is requesting not to be forced to respond to a separate action in state court where it is already defending the *same* claims in federal court (both in this action and in *Abbott, Allen,* and *Baugh)* and has already expended considerable time and resources in doing so.

The parties also believe that the principle of comity weighs against this Court relinquishing supplemental jurisdiction of the remaining state law claims. The remaining claims are negligence and invasion of privacy as they relate to implementation of the COVID-

---

[9] Notably, those three actions have already undergone Phase I of discovery and have now entered Phase II of discovery. This Court has spent extensive time with counsel for the parties in mapping out how discovery will play out in Phase II, including how Plaintiff's claims can be timely included within the discovery plan without any undue prejudice to either party or further delay of these proceedings.  In discussing discovery with the parties, Plaintiff's counsel has voiced no objection to the Plaintiff being "caught up" into the already-conducted discovery.

19 vaccine mandate by Austal, the exemption process, and the subsequent termination of Plaintiff's employment. These claims involve "relatively simple questions of state law," that weigh in favor of this Court retaining jurisdiction. *See Parker v. Exterior Restorations, Inc.*, 601 F.Supp.3d 1221, 1236 (S.D. Ala. 2022), *citing West v. City of Albany*, 830 Fed. Appx. 588, 597 (11th Cir. 2020). The parties also suggest that this Court must consider that relinquishing jurisdiction of the state law claims would possibly result in unnecessary prolonging of this action and, even more importantly, re-litigation of this action in a separate forum,[10] both of which weigh in favor of retaining such jurisdiction. *See Wilson, supra,* at *2. Therefore, it is recommended that jurisdiction over Counts V and VI in Plaintiff's Amended Complaint be retained.[11]

## V.    *Conclusion*

For the foregoing reasons, Austal's Motion for Partial Dismissal is due to be **GRANTED**. Plaintiff's allegations are not considered sufficient to support a finding that it is plausible to believe that the alleged infringement of his federal rights are fairly attributable to actions of the United States or the State of Alabama. Further, it is recommended that jurisdiction over Counts V and VI in Plaintiff's Amended Complaint be retained pursuant to 28 U.S.C. § 1367.

---

[10] The Court notes that this possibility of re-litigation also raises the possibility of inconsistent results between this action and those currently pending before this Court in *Abbott, Allen,* and *Baugh.*

[11] While it is ultimately in the Court's discretion to determine whether supplemental jurisdiction is proper, the Court notes that both counsel for Plaintiff and counsel for Austal, at the November 9, 2023 hearing, noted their assent to the Court retaining supplemental jurisdiction over the state the law claims should the federal law claims be dismissed.

Any party wishing to object to this Report and Recommendation shall do so not later than **March 4, 2024**.[12]

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must file specific written objections with the Clerk of this Court not later than **March 4, 2024**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error, if necessary, "in the interest of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 26th day of February, 2024.

---

[12] The time for filing objections is shortened for two reasons.  First, after oral argument on the partial motion to dismiss, an order was entered on January 3, 2024 putting all parties on notice that a preliminary decision was made that the Defendant was the prevailing party on the motion.  Doc. 48.  And secondly, Plaintiff's counsel received a copy of a proposed report and recommendation sent in an email by Defendant's counsel on January 17, 2024.  Plaintiff has known the essence of what is contained in the report and recommendation since January 17, 2024.

s/William E. Cassady
**UNITED STATES MAGISTRATE JUDGE**